## State of Vermont v. Ben-Mont Corporation

[652 A.2d 1004]

No. 91-487

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed November 18, 1994

54

*Jeffrey L. Amestoy*, Attorney General, *Ron Shems* and *Susan R. Harritt*, Assistant Attorneys General, and *Debbie Kerzner*, Law Clerk (On the Brief), Montpelier, for Plaintiff-Appellee.

*Raymond G. Bolton*, Bennington, and *Michael J. O'Neill* and *Paul J. Leikhim*, Boston, Massachusetts, for Defendant-Appellant.

**Allen, C.J.** Defendant appeals from a district court judgment denying its pretrial motion to dismiss the information for failure to charge a crime under Vermont's Waste Management Act, 10 V.S.A. §§ 6601-6632. Defendant also appeals the criminal fines as excessive. We affirm.

Defendant, a Massachusetts corporation, operated a manufacturing facility in Bennington, Vermont which made Christmas wrapping paper. Officials from the Agency of Natural Resources (ANR) inspected defendant's facility eight times between February 1986 and November 1988. During the inspections, ANR collected and tested samples of ink wash and alkaline stripping solution used to clean defendant's printing equipment. ANR determined the water-based ink wash to be a hazardous waste because of its ignitability. ANR identified the byproduct of the alkaline solution as a highly corrosive sludge, also a hazardous waste by definition. Because defendant did not obtain the required certification, ANR concluded that defendant had improperly generated and stored hazardous waste.

ANR issued four separate Notices of Violation to defendant for violating Vermont's Waste Management Act and several rules promulgated by ANR pursuant to the Act. In November 1988, due to defendant's failure to comply voluntarily, ANR referred the matter to the Attorney General's office. That office conducted an inspection and confirmed that hazardous wastes were improperly stored on defendant's premises.

In June 1990, the Attorney General charged defendant with twenty-four misdemeanor counts of improperly managing its hazard-

ous wastes in violation of 10 V.S.A. § 6606(a) and other specified regulations under Vermont's Hazardous Waste Management Rules (VHWMR). Defendant moved for dismissal on seventeen of the counts on grounds that the information failed to charge an offense. Defendant argued that 10 V.S.A. § 6612(a), which provides criminal penalties for "violations of rules promulgated herein," applied only to rules contained within the Waste Management Act; therefore, the rules promulgated by ANR were unenforceable under § 6612(a). The court denied defendant's motion.

The parties entered into a plea agreement in which defendant pled guilty to four counts and reserved the right to appeal the court's denial of its pretrial motion, if the fines exceeded $40,000. The State agreed to recommend fines of not less than $5,000 and not more than $20,000 for each count and to dismiss all remaining charges with prejudice. Defendant entered a guilty plea pursuant to the agreement. At sentencing, the trial court imposed fines totalling $65,000 for the four counts. This appeal followed.

Defendant raises three issues on appeal. First, it claims the trial court erred when it denied defendant's motion to dismiss the information for failure to charge a crime. In support of its position, defendant challenges as erroneous the trial court's construction of § 6612(a). Second, defendant contends that § 6612 is unconstitutional. Third, defendant claims the fines were excessive because § 6612(b) limits civil fines to $10,000 for each violation.

Defendant's first claim is that the trial court erred when it concluded that 10 V.S.A. § 6612(a) authorized criminal prosecutions for violations of ANR regulations promulgated pursuant to Vermont's Waste Management Act. Section 6612 provides in relevant part:

> (a) Any person who violates any provision of this chapter, *the rules promulgated herein* or the terms or conditions of any order of certification granted by the secretary, shall be subject to a criminal penalty not to exceed $25,000.00 or imprisonment for not more than six months, or both.

> (b) Any person who violates any provision of this chapter relating to solid or hazardous waste management, *the regulations promulgated thereunder*, or the terms or conditions of any order relating to solid or hazardous waste management or . . . facility certification, shall be subject to a civil penalty not to exceed $10,000.00.

> . . . .

(d) Any person who commits any of the following in violation of any provision of this chapter, *the rules adopted under this chapter,* or the terms and conditions of any order or certification under this title shall be subject to a criminal penalty not to exceed $250,000.00, or imprisonment for not more than five years, or both . . . .

10 V.S.A. § 6612 (emphasis added).

Defendant urges us to apply literal meaning to the word "herein" and hold that in § 6612(a) the phrase "rules promulgated herein" refers only to rules actually located within chapter 159. To buttress this argument, defendant contends the three different references to rules within § 6612 are intended to have distinct meanings. Defendant also suggests that the use of different words when referring to rules makes it clear that the Legislature reserved for itself the sole authority to define crimes. Therefore, defendant concludes that the State cannot prosecute ANR violations.

In contrast, the State argues that it is obvious from the statute as a whole that the phrase "rules promulgated herein" refers to rules adopted under chapter 159. Such a construction, argues the State, would promote the Legislature's intent to criminalize violations of all regulations and to ensure that Vermont's Waste Management Act is compatible with the Resource Conservation and Recovery Act (RCRA) and its attendant regulations. We agree with the State.

In cases of statutory construction, our task is to discern the Legislature's intent and give effect to that intent. *Spears v. Town of Enosburg,* 153 Vt. 259, 261, 571 A.2d 604, 605 (1989). In determining the legislative intent, we may review the entire statutory scheme. *Id.* at 262, 571 A.2d at 605-06 ("Statutory construction compels the Court to look beyond the language of a particular section, standing alone, to 'the whole statute, the subject matter, its effects and consequences, and the reason and spirit of the law.'"). Our interpretation must further fair, rational results, *id.* at 261, 571 A.2d at 605, and if possible, give meaning and effect to all the statutory language. *State v. Baldwin,* 140 Vt. 501, 512, 438 A.2d 1135, 1141 (1981). The history and framework of chapter 159 reflect the Legislature's intent to criminalize violations of ANR rules promulgated pursuant to the Waste Management Act.

Vermont's Waste Management Act, 10 V.S.A. chapter 159, was enacted to address the increasingly complex social, economic and legal problems of managing solid and hazardous wastes. 10 V.S.A.

§ 6601; see also Note, *Solid Waste Source Reduction and the Product Ban: A Commerce Clause Violation?*, 13 Vt. L. Rev. 691, 696-98 (1989) (describing history of Vermont's solid waste management legislation). Chapter 159 was modeled after and enacted to comply with the Resource Conservation and Recovery Act of 1976 (RCRA), 42 U.S.C. §§ 6901-6991, chapter 82 (Solid Waste Disposal). See Note, *supra,* at 696 (discussing enactment of chapter 159 in response to RCRA). Like RCRA, chapter 159 outlines a comprehensive cradle-to-grave scheme for managing the generation, treatment, storage, transportation and disposal of waste. See *United States v. Johnson & Towers, Inc.*, 741 F.2d 662, 666 (3d Cir. 1984) (describing scope and purpose of RCRA). Both RCRA and chapter 159 rely heavily on environmental agencies to implement their statutory goals. Compare 10 V.S.A. § 6603(1) (secretary has authority to promulgate rules to implement purpose of statute) with 42 U.S.C. § 6907 (same); and 10 V.S.A. § 6610 (secretary of agency authorized to enforce compliance) with 42 U.S.C. § 6928(a) (same).

Like RCRA, Vermont's Waste Management Act initially provided for only misdemeanor penalties. See *Johnson & Towers*, 741 F.2d at 667 (prior to 1978, RCRA authorized only misdemeanor penalties); 1977, No. 106, § 1, codified at 10 V.S.A. § 6612 (providing misdemeanor penalties only). Amendments to RCRA in 1978 authorized felony prosecutions and expanded the scope of the criminal provisions. See *Johnson & Towers*, 741 F.2d at 667. Civil penalties were added to RCRA in 1980. 42 U.S.C. § 6928(g) (amended 1980). In 1984, the Vermont Legislature expanded the scope of § 6612, adding subsection (b) to institute civil penalties for violations of hazardous waste provisions and regulations. 1983, No. 148 (Adj. Sess.), § 8. In 1987, Act 78 extended the civil penalties to violations of solid waste provisions and regulations. 1987, No. 78, § 15. Finally, in 1990, the Legislature added a felony provision, 10 V.S.A. § 6612(d). 1989, No. 286 (Adj. Sess.), § 5.

■ ■ Section 6612 imposes felony and civil penalties within RCRA's guidelines. See 42 U.S.C. § 6929 (prohibiting less stringent state requirements); compare 10 V.S.A. § 6612(b), (c) and (d) (providing civil and criminal penalties, each day of violation constitutes a separate violation) with 42 U.S.C. § 6928 (same). In addition, § 6612(a) imposes misdemeanor penalties which are permissible under 40 C.F.R. 271.1(i)(1) (1993) (authorizing stricter penalties and requiring minimum civil and felony penalties). Although 42 U.S.C. § 6928 does not explicitly authorize criminal enforcement of RCRA's

underlying regulations, the case law makes clear that violations of RCRA regulations may constitute criminal violations of RCRA. See, e.g., *United States v. Baytank (Houston), Inc.*, 934 F.2d 599, 602 (5th Cir. 1991) (violations of storage rules subjected defendant to criminal liability). The Vermont Legislature's effort to mirror RCRA and its enforcement provisions reflects a legislative intent to criminalize violations of ANR rules.

The framework of chapter 159 further evinces the Legislature's intent to criminalize violations of ANR rules. The Legislature relied on the expertise of ANR and its rule-making authority to give full effect to the Act's purpose and goals. See 10 V.S.A. § 6603 (authorizing secretary pursuant to the Administrative Procedure Act to adopt, amend and repeal rules to implement the provisions of chapter 159). The only rules contemplated pursuant to chapter 159 are ANR rules or other agency rules promulgated in conjunction with ANR. See 10 V.S.A. § 6603 (authorizing ANR rules); *id.* § 6607 (authorizing Agency of Transportation to promulgate rules in conjunction with ANR); *id.* § 6608a (authorizing Commissioner of Agriculture to promulgate rules in conjunction with ANR).

■ In light of § 6612's legislative history and the Legislature's intent to delegate to ANR the responsibility for implementing chapter 159, it is only logical that the rules promulgated by ANR be enforced through chapter 159's penalty provision. Therefore, we hold that in the context of chapter 159, the phrase "rules promulgated herein" in § 6612(a) means the rules promulgated pursuant to chapter 159. Criminalizing violations of ANR regulations gives chapter 159 its intended effect — a comprehensive cradle-to-grave waste management system with guidelines and incentives to ensure individual responsibility. See 10 V.S.A. § 6601 ("overall problems of solid waste management . . . necessitate state action through . . . regulation . . . and the implementation of a program . . . [which is] environmentally sound, and . . . encourages innovation and individual responsibility"). Our interpretation also gives full effect to the Legislature's effort to mirror RCRA enforcement.

■ While we agree with defendant that "herein" literally means within or in, we do not agree that a literal meaning should necessarily be applied to the phrase at issue. We will not confine ourselves to the literal meaning of a statute when it contradicts the legislative intent. See, e.g., *Baldwin*, 140 Vt. at 511, 438 A.2d at 1140 (to avoid frustrating legislative intent, statutory definitions located in separate

chapter without enabling provisions will not be made inoperative by unartful legislative drafting). Likewise, defendant's second argument that § 6612(a)'s language was deliberately inserted and should be given its distinctive meaning would normally be persuasive, but for its ultimate result. See *Russello v. United States*, 464 U.S. 16, 23 (1983) (differing language in different subsections concluded not to have same meaning and not to be result of simple mistake in draftsmanship; "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same act, it is *generally* presumed that Congress acts intentionally and purposely") (emphasis added). While the Legislature's frequent and distinctive references to "rules" within § 6612, and throughout chapter 159, suggests a distinctive interpretation,* we will not construe a statute in a way that renders a significant part of it surplusage. *Trombley v. Bellows Falls Union High School District No. 27*, 160 Vt. 101, 104, 624 A.2d 857, 860 (1993). Because there are no rules contained in chapter 159, defendant's reading of "herein" makes the phrase wholly inoperative and leaves a gaping hole in the statute's enforcement. Moreover, it would be illogical to allow for misdemeanor enforcement of the terms and conditions of a permit granted by the secretary of ANR, but not for the regulations that give those permits effect. We cannot endorse an interpretation which leads to meaningless or incongruous results. See *Town of Enosburg*, 153 Vt. at 262, 571 A.2d at 606 (incongruous construction should be avoided); *Baldwin*, 140 Vt. at 511, 438 A.2d at 1140 (presumption that enactment of meaningless legislation is not intended). Our construction of § 6612(a) gives effect to every phrase and is in harmony with the spirit of the law. *Baldwin*, 140 Vt. at 511, 438 A.2d at 1140.

Defendant's constitutional challenges to § 6612 also fail. On appeal, defendant argues that if § 6612(a) criminalizes violations of ANR regulations, then § 6612(a) by itself, and § 6612(a) and (b) together, are unconstitutional under the Equal Protection and Due Process Clauses of both the United States and Vermont Constitutions. In addition, defendant contends that because the ANR regulations are not contained within the statute, criminal prosecutions of such regulations lack fair warning, and could lead to arbitrary and discriminatory enforcement. In its pretrial motion, defendant chal-

---

* Cf. § 6608a (rules promulgated by the Secretary) § 6610a (rules promulgated thereunder); § 6612(a) (rules promulgated herein); § 6612(b) (rules promulgated thereunder); § 6612(d) (rules adopted under this chapter).

lenged the Attorney General's information as violative of the Separation of Powers Clause of the Vermont Constitution and the Due Process Clause of the United States Constitution. Defendant also claimed the State's investigation and proceedings pursuant to 13 V.S.A. §§ 5131-5137 were fundamentally unfair and violative of due process. Defendant, however, did not challenge § 6612(a) on any constitutional basis in its pretrial motion. Defendant cannot introduce a different constitutional challenge for the first time on appeal on the pretext that it made a constitutional challenge below. See *State v. Lettieri*, 149 Vt. 340, 344, 543 A.2d 683, 685 (1988) (party precluded from raising objection on appeal on grounds different from those raised below).

■ Next, defendant contends the quotation it used in its pretrial motion from *United States v. Bass*, 404 U.S. 336, 347 (1971), discussing the policy of requiring fair warning in criminal statutes, was sufficient to preserve a due process challenge on appeal. To properly preserve an issue for appeal a party must present the issue with specificity and clarity in a manner which gives the trial court a fair opportunity to rule on it. See *State v. Emmi*, 160 Vt. 377, 380, 628 A.2d 939, 941 (1993) (Court will not consider constitutional theory not offered before trial court). Defendant cited *Bass* for the proposition that courts should construe criminal statutes narrowly and resolve ambiguities in favor of defendants. The mere mention of fairness, especially when buried in an unrelated argument regarding statutory construction, lacks the specificity and clarity necessary to preserve the claim now being made. Because of our disposition regarding the statutory construction of § 6612(a), defendant's plain error argument also fails. We decline to entertain defendant's due process and equal protection claims because they were not properly preserved.

■ Finally, defendant argues that the court abused its discretion by imposing excessive fines and also suggests that the $20,000 fine for each count was excessive as a matter of law. Based on our construction of § 6612(a), defendant's claim that the fines impermissibly exceeded the $10,000 limit of the civil sanctions, 10 V.S.A. § 6612(b), is unavailing. The fines imposed were within the permissible limits, because § 6612(a) authorizes fines up to $25,000 for each violation.

■ Defendant's claim that the trial court abused its discretion by imposing excessive fines is likewise unavailing. Defendant merely alleges the fines were excessive, but fails to identify any factual error or prejudice below. See *State v. Chambers*, 144 Vt. 377, 384, 477 A.2d

974, 979 (1984) (absent showing of contradictory evidence by defendant of material inaccuracy, allegations of inaccuracy in presentence investigation report does not amount to error). The record, which includes defendant's own admission that it knowingly and repeatedly stored hazardous waste in violation of ANR regulations, amply supports the court's determination. The court's sentencing statement also reflects a thoughtful discussion and resolution of both parties' objections to the presentence investigation report and other information taken into account, as required by V.R.Cr.P. 32(c)(4). In delivering the sentence, the court noted that each of the offenses was an egregious violation of the rights of the citizens of this state to a clean environment. The fines were within the bounds of the court's discretion.

*Affirmed.*