NOTICE:  This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports.  Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2021 VT 78

No. 2020-291

| | |
|---|---|
| Sarahann Peachey | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Windham Unit, |
| | Family Division |
| | |
| Mahlon Peachey | May Term, 2021 |

Michael R. Kainen, J.

Cielo M. Mendoza, Legal Services Vermont, Burlington, for Plaintiff-Appellee.

Mahlon Peachey, Pro Se, Penn Yan, New York, Defendant-Appellant.

PRESENT:  Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.

¶ 1.    **COHEN, J.**  Defendant father appeals a final relief-from-abuse order issued by the family division of the superior court, which prohibits father from contacting mother or the parties' children except during one weekly telephone call with the children.  Father argues that his right to due process was violated because the court conducted the evidentiary hearing remotely and he missed a portion of the hearing due to technical issues.  He further argues that the restrictions on parent-child contact imposed by the court were an impermissible modification of the existing contact order that was not supported by a finding of changed circumstances or an assessment of the statutory best-interests factors.  Finally, he claims that the protective order must be reversed because it is self-contradictory and not supported by the evidence.  We affirm.

¶ 2.    The parties married in 2010 and separated in May 2019.  They have four minor sons, W.P., A.P., N.P., and B.P.  The oldest boy is now nine years old and the youngest is four. Mother filed for divorce in November 2019.  In January 2020, the court issued an interim order granting primary custody of the children to mother.  Father was to have contact with the children twice a week, from Wednesday afternoon to Thursday morning and from Saturday morning to Sunday morning.

¶ 3.    In August 2020, mother filed a complaint for relief from abuse in the family division, alleging that father had attempted to kidnap the children and take them to live in New York.  She further alleged that he had physically abused the children and had used limited force on her, and that she feared he would retaliate against her for the divorce.  This was mother's second complaint for relief from abuse against father.  The first complaint, which she filed in May 2019, was denied by the court after a hearing in June 2019.[1]

¶ 4.    The court scheduled a hearing on mother's complaint in October 2020.  Due to the COVID-19 pandemic, the court notified the parties that the hearing would be conducted remotely using video conferencing software.  If a party chose to appear in court, a mask would be required. Father called in by telephone before the hearing began but his connection failed.  The court decided to proceed with the hearing in his absence.  After mother had testified for a few minutes, father rejoined the hearing by telephone.  The court summarized mother's testimony up to that point for father, and then permitted mother to finish her testimony.  Father was offered the opportunity to ask mother questions but did not do so.  Instead, he asked the court why it was addressing mother's complaint when it had previously rejected mother's 2019 request for a relief-from-abuse order,

---

[1]  The record of the prior relief-from-abuse proceeding was not entered into evidence below.  We take judicial notice of the docket entries in that case.  See Roethke v. Jake's Original Bar & Grill, 172 Vt. 555, 556 n.*, 772 A.2d 492, 493 n.* (2001) (mem.) (taking judicial notice of docket entries in related case).

which he asserted was based on many of the same allegations. He testified briefly that the children enjoyed their time with him. He denied that he had abused them.

¶ 5. Following the hearing, the court issued a final order in October 2020 in which it consolidated the relief-from-abuse proceeding with the divorce proceeding and granted mother's request for a protective order. In its final order, the court found as follows. Father had physically intimidated mother on several occasions. In May 2018, on the date that the parties were to close on the purchase of their Vermont home, father was running late. Mother encouraged him to move along, and father jumped up, raised his fists, and came at her as if he was going to strike her. Mother was holding the youngest child and ran out to the car. Mother was scared that father would physically hurt her. Similar incidents occurred throughout the marriage. The most recent incident occurred at the Vermont State Police barracks in Westminster in July 2020, where the parties met to exchange the children. Three of the boys got out of the truck, and five-year-old N.P. was still buckled in. Father was angry about something, and mother was attempting to unbuckle N.P. Father pushed mother out of the way and gave her an angry glare. The push did not hurt, but mother was fearful of father's expression and withdrew.

¶ 6. The court further found that father had routinely hit the children during the marriage. When the parties' oldest son, W.P., was three weeks old, father shook and hit him to make him stop crying. When W.P. was two years old, father smacked him for crying, giving W.P. a bloody nose. Father would hold his hand over the boys' mouths and sometimes their noses to stop them from crying. On one occasion when father did this with A.P., mother realized the child could not breathe. She was afraid to intervene but finally did so when she became concerned about the amount of time father was restricting A.P.'s breath. The court found that father's actions went beyond the limits of acceptable corporal punishment and were unreasonable and cruel.

¶ 7. Pursuant to the temporary order in the divorce proceeding, father had custody of the children for two nights a week at the former marital residence. N.P. came home from a visit

with father with bruises on his back and bottom, and W.P. had red marks across his face. The boys told mother that father had caused the injuries. The court noted that the boys' statements were hearsay but found based on the parties' history and the timing of the injuries that father had inflicted them.

¶ 8. In August 2020, the boys reported to mother that the marital residence was almost empty. Mother feared that father was planning to flee out of state with the children. She filed an emergency motion to modify parent-child contact. The court denied the request for emergency relief but issued an order prohibiting father from taking the children out of Vermont for more than a day trip without mother's written permission.

¶ 9. Two days later, on August 19, 2020, mother delivered the boys to father for an overnight visit as required by the interim parent-child contact order. Father filed a document with the court that day stating that it lacked jurisdiction over him. Later that night, father texted mother the following message: "Hi Sarahann the boys are going to stay home now, we're not continuing with this child trafficking and the way you're trying to raise them is not natural or acceptable. Goodbye." Mother saw the message in the early morning and called the state police. A trooper went to the marital home and determined that it was empty, but informed mother there was nothing he could do unless father failed to return the children to her at the scheduled time later that morning. When father failed to do so, police began searching for him in earnest. Mother knew that father had family in western New York and believed he had found employment there, and police learned that father had received a ticket for texting while driving in Yates County, New York, a week earlier. The criminal division of the Windham Superior Court issued a warrant against father for custodial interference, and the children were located and taken into custody by New York officials until mother could make the five-hour drive to collect them.

¶ 10. Based on these findings, the court concluded that father had abused the children by causing them physical harm and had abused mother by placing her in imminent fear of serious

4

bodily harm, and that there was a danger of further abuse. It denied mother's request to terminate all contact between father and the children, finding that the risk of future abuse or abduction could be prevented by eliminating in-person contact. The court noted that in the divorce proceeding, it had already limited father's contact to one ten-minute phone call per week after father attempted to abscond with the children to New York. Consistent with that order, it issued a final relief-from-abuse order prohibiting father from contacting mother or the children in any way, except that he could have one ten-minute phone call with the children per week.

¶ 11. On appeal, father raises a number of claims. He argues that use of a remote hearing, and the judge's conduct of the hearing, violated his right to due process. He argues that the Governor's order declaring a state of emergency due to the COVID-19 pandemic did not permit the court to dispense with in-person hearings. He contends that the court improperly modified parent-child contact without making the required finding of changed circumstances or adequately addressing the best interests of the children. He further argues that the court's order is self-contradictory and impossible for him to comply with. Finally, he claims that the court's finding of abuse is not supported by the evidence. We conclude that none of these claims have merit.

¶ 12. We first address father's due process arguments. Father maintains that the court violated his right to due process by conducting the hearing remotely because he was denied his right to confront mother in person, the judge was unable to fully observe the witnesses and thereby gauge their credibility, and he was unable to submit documentary evidence to the court. He argues that he was further denied due process when the judge began the hearing without him, because he missed several minutes of mother's testimony.

¶ 13. We conclude that father failed to preserve these claims for our review by raising them before the family court. "To properly preserve an issue for appeal a party must present the issue with specificity and clarity in a manner which gives the trial court a fair opportunity to rule on it." State v. Ben-Mont Corp., 163 Vt. 53, 61, 652 A.2d 1004, 1009 (1994). The purpose of the

5

preservation rule is to give the original court a chance to rule on an issue before we review it. In re White, 172 Vt. 335, 343, 779 A.2d 1264, 1270-71 (2001). "[A]llowing a party to wait to raise the error until after the negative verdict encourages that party to sit silent in the face of claimed error, a policy we have admonished." In re Entergy Nuclear Vt. Yankee, LLC, 2007 VT 103, ¶ 9, 182 Vt. 340, 939 A.2d 504 (quoting Christopher v. Florida, 449 F.3d 1360, 1370 (11th Cir. 2006) (Barkett, J., concurring and dissenting)).

¶ 14.    In this case, the court notified father in advance that the hearing would be conducted using video conferencing software, and that if he chose to appear in person, a mask would be required. This was consistent with the version of Administrative Order 49 then in effect, which directed trial courts to schedule hearings for remote participation "to the maximum extent possible" due to the COVID-19 pandemic, but permitted individuals to enter courthouses for the purpose of attending relief-from-abuse hearings. See A.O. 49, §§ 5(c), 7(a)(ii) (June 19, 2020), https://www.vermontjudiciary.org/sites/default/files/documents/AO%2049%20Amendment%20-%20Declaration%20of%20Judicial%20Emergency%20and%20Changes%20to%20Court%20Procedures%206-19-20.pdf [https://perma.cc/44JR-99HG]. At no point before, during, or after the hearing did father object to it being conducted remotely. He had the opportunity to participate in the hearing in person or by video but chose to appear by telephone. When he finally connected and was informed by the judge that mother's testimony had begun, he did not object in any way. He also did not contest the accuracy of the judge's summary of mother's testimony and chose not to ask her any questions when allowed to do so. Finally, at no point below did father seek to introduce documentary evidence or argue that the remote hearing prevented him from doing so. Because father failed to raise any of his due process claims before the family court, we decline to address them on appeal. Ben-Mont Corp., 163 Vt. at 61, 652 A.2d at 1009 (declining to entertain defendant's due process and equal protection claims because not properly preserved).

6

¶ 15. We recognize that father was self-represented during the proceeding below, and that we "afford pro se litigants greater flexibility with respect to the preservation rules." Entergy Nuclear Vt. Yankee, 2007 VT 103, ¶ 12. But this flexibility does not mean dispensing with the rules altogether, and father has not demonstrated that he raised his due process claims, even vaguely, before the family court. See id. (rejecting claim that preservation rule should not apply to pro se appellant); Vahlteich v. Knott, 139 Vt. 588, 590-91, 433 A.2d 287, 288 (1981) (explaining that while Court will not allow unconscionable advantage to be taken of pro se litigants, "[t]his does not mean that [they] are not bound by the ordinary rules of civil procedure").

¶ 16. Because we do not consider father's due process claims, we need not address his related argument that the emergency executive orders issued by the Governor in response to the COVID-19 pandemic did not authorize the family court to conduct a remote hearing.

¶ 17. Father next argues that the relief-from-abuse order effectively modified the interim parent-child contact order, and under 15 V.S.A. § 668, the family division could not modify parent-child contact without first determining that there had been a real, substantial, and unanticipated change in circumstances. We disagree that the court was required to make a finding of changed circumstances in this context. The abuse-prevention statute authorizes the family division to issue temporary orders governing parent-child contact in cases involving abuse. 15 V.S.A. § 1103(c)(2)(D) (providing that relief-from-abuse order may include "[a]n order for parent-child contact under such conditions as are necessary to protect the child or the plaintiff, or both, from abuse"). The statute does not require the court to make a finding of changed circumstances before modifying an existing parent-child contact arrangement in such a case. The absence of such a requirement is consistent with the purpose of the abuse-prevention statute as a whole, which is to provide "fast, temporary relief to family members in immediate danger" through uncomplicated and inexpensive proceedings. Rapp v. Dimino, 162 Vt. 1, 4, 643 A.2d 835, 836–37 (1993). While ordinarily custody decisions "are better resolved in proceedings concerning divorce, legal

7

separation, parentage, or desertion and support," the provisions of the abuse-prevention statute make clear that the Legislature intended to permit family courts to make temporary custody and visitation decisions in a relief-from-abuse proceeding when there is evidence that the children had been abused or were in danger of being abused. Id.; see 15 V.S.A. § 1103(c)(1) (stating "court shall make such orders as it deems necessary to protect the plaintiff or the children, or both," if it finds abuse); id. § 1103(c)(2)(C) (providing that court may make temporary award of parental rights and responsibilities); id. § 1103(c)(2)(D) (stating that court may order parent-child contact under conditions necessary to protect child or plaintiff). This power is independent of the family court's authority to award custody in other types of proceedings. Rapp, 162 Vt. at 4, 643 A.2d at 837.

¶ 18.    Furthermore, in this case, the relief-from-abuse order did not actually modify the operative parent-child-contact order. After father attempted to remove the children from Vermont in August 2020, mother filed an emergency motion to suspend parent-child contact. The court issued an order on August 26, 2020, suspending in-person contact until the final divorce hearing and limiting father's contact to weekly telephone calls. This order, which father did not seek to appeal, was the order in effect when the court issued the final relief-from-abuse order in October 2020. The court simply adopted the same contact arrangement in the protective order that it had previously imposed.

¶ 19.    Father also claims that the court's order must be reversed because it failed to explicitly analyze each of the best-interests factors set forth in 15 V.S.A. § 665(b). It is true that when the court finds in an abuse-prevention case that contact between the defendant and the children will result in further abuse, the court is required to consider the best interests of the children in determining whether contact will occur and under what conditions. V.R.F.P. 9(f)(3). However, the rule requires only that the court consider these factors; it "imposes no specific requirement on how this consideration is to be manifested in the court's findings and conclusions."

8

Mansfield v. Mansfield, 167 Vt. 606, 607, 708 A.2d 579, 581 (1998) (mem.). "We will uphold the trial court's parent-child contact award if it shows 'reasoned judgment in light of the record evidence.'" Lee v. Ogilbee, 2018 VT 96, ¶ 11, 208 Vt. 400, 198 A.3d 1277 (quoting DeLeonardis v. Page, 2010 VT 52, ¶ 20, 188 Vt. 94, 998 A.2d 1072).

¶ 20.    Here, the court determined that it was not in the children's best interests to terminate all contact with father. However, it found that the children were at risk both of further physical abuse and of being abducted if in-person contact with father continued. It accordingly concluded that father's contact should be limited to weekly telephone calls and adopted the existing limitations on contact that it had previously imposed in the divorce proceeding.

¶ 21.    The court's reasoning is clear and is supported by the evidence, and the resulting order was not an abuse of its discretion. See Raynes v. Rogers, 2008 VT 52, ¶ 9, 183 Vt. 513, 955 A.2d 1135 ("[W]e review the family court's decision to grant or deny a protective order only for an abuse of discretion, upholding its findings if supported by the evidence and its conclusions if supported by the findings."). The court found that father had attempted to interfere with mother's custodial rights by taking the children to New York and had physically abused them while they were in his care. These findings are supported by mother's testimony. This evidence was sufficient to justify limiting father's contact with the children to phone calls for some time, to provide a cooling-off period and to allow father to address the underlying issues that led to the limitations.[2] See Benson v. Muscari, 172 Vt. 1, 10, 769 A.2d 1291, 1299 (2001) (affirming five-year relief-from-abuse order where defendant's physical violence and history between parties justified long cooling-off period).

¶ 22.    Father argues that the order is self-contradictory and therefore impossible for him to follow, because it prohibits any contact with mother but, as a practical matter, requires that he

---

[2]  The court indicated that it was open to revising the parent-child contact arrangement at the final divorce hearing if father participated in a domestic violence program for perpetrators.

coordinate his weekly telephone calls with her. We see no inconsistency. The relief-from-abuse order adopts the court's existing contact order in the divorce proceeding, which explains the procedure for the weekly telephone calls in greater detail. Specifically, that order explains that the telephone calls are to take place on Wednesdays at 7:00 p.m., that mother may terminate the call if father asks the children prohibited questions, and that father may not call back until the appointed time the following week. The order requires no advance contact between father and mother for the calls to take place.

¶ 23. Finally, father argues that the evidence did not support the court's finding that he had abused mother and the children. "In a relief-from-abuse hearing, the plaintiff has the burden of proving abuse by a preponderance of the evidence." Coates v. Coates, 171 Vt. 519, 520, 769 A.2d 1, 2-3 (2000) (mem.). We will uphold the family court's "findings if supported by the evidence and its conclusions if supported by the findings." Raynes, 2008 VT 52, ¶ 9.

¶ 24. Father maintains that mother raised identical allegations of abuse in the May 2019 relief-from-abuse proceeding, and the court had refused to issue an order of protection. He argues that the only new evidence since that proceeding was the trip to New York, which involved no abuse to the children or mother. He contends that it was error for the court to issue a protective order on this record. In essence, father is arguing that the doctrine of claim preclusion, also known as res judicata, applies to this case. The doctrine of claim preclusion "bars the litigation of a claim or defense if there exists a final judgment in former litigation in which the parties, subject matter and causes of action are identical or substantially identical." In re Tariff Filing of Cent. Vt. Pub. Serv. Corp., 172 Vt. 14, 20, 769 A.2d 668, 673 (2001) (quotation omitted). Father's position appears to be that the second relief-from-abuse proceeding was barred because her claim of abuse had been litigated and decided in his favor in the earlier proceeding.[3]

---

[3] To the extent that father argues that "issue preclusion" applies—that is, that specific findings by the trial court as to allegations of past abuse are precluded by prior court findings, after

¶ 25. Father's argument fails because claim preclusion does not apply where the evidence in the two cases is "sufficiently different" such that the claims are not identical. Am. Trucking Ass'ns, Inc. v. Conway, 152 Vt. 363, 371, 566 A.2d 1323, 1328 (1989). Mother's August 2020 relief-from-abuse complaint raised a new and different claim that was predicated primarily on father's conduct toward mother since she filed for divorce and his taking the children out of state in violation of the governing order, coupled with evidence of past instances of abuse. In addition to her testimony that father had routinely struck the children and punished them by restricting their breathing during the marriage, mother testified that since the divorce proceeding began, father had continued to physically abuse the boys when they were in his care. She further testified that father had caused her to fear for her own safety during a custody exchange by pushing her out of the way while she was trying to unbuckle a child from the car and giving her a menacing stare. The court found mother's testimony to be credible and consistent. We must defer to its assessment of the evidence, which supports its finding that abuse had occurred. See Raynes, 2008 VT 52, ¶ 9 ("In matters of personal relations, such as abuse prevention, the family court is in a unique position to assess the credibility of witnesses and weigh the strength of evidence at hearing.").

Affirmed.

FOR THE COURT:

_____
Associate Justice

---

a hearing, concerning those same allegations—the argument is inadequately briefed. See Kneebinding, Inc. v. Howell, 2020 VT 99, ¶ 61, __ Vt. __, 251 A.3d 13 (providing that under V.R.A.P. 28(a)(4), Court need not consider inadequately briefed arguments).