NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2024 VT 72

No. 23-AP-325

| | |
|---|---|
| Jane Doe | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Civil Division |
| | |
| Victoria Camacho | May Term, 2024 |

Helen M. Toor, J.

James A. Valente and Zachary Hozid of Costello, Valente & Gentry, P.C., Brattleboro, for
 Plaintiff-Appellant.

Kevin A. Lumpkin of Sheehey Furlong & Behm P.C., Burlington, for Defendant-Appellee.


PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.


¶ 1. **COHEN, J.** Plaintiff Jane Doe, proceeding by pseudonym, appeals from a civil division order dismissing her July 2023 complaint as time-barred. She does not dispute that her claims against defendant Victoria Camacho were each subject to three-year statutes of limitations that began to run in April 2020. However, plaintiff filed a substantively identical set of claims against defendant in June 2022, see Jane Doe v. State of Vermont et al., No. 22-CV-02175 [hereinafter Doe I]. Plaintiff argues that, given the circumstances surrounding the dismissal of those claims, the trial court erred in concluding that the instant complaint was not timely filed under Vermont's savings statute, 12 V.S.A. § 558, or, in the alternative, pursuant to the equitable-tolling doctrine. We affirm.

## I. Background

¶ 2. Before setting forth the relevant procedural background, we address an outstanding issue relating to the scope of the record on appeal. As noted above, plaintiff's arguments for application of the savings statute and equitable-tolling doctrine each hinge on the events culminating in the dismissal of her claims against defendant in Doe I. In this appeal, plaintiff submitted a printed case containing filings and a hearing transcript from that earlier proceeding. We ordered plaintiff to show cause as to why the printed case should not be struck under Vermont Rule of Appellate Procedure 30(d)(3), which provides that "[o]nly materials that are part of the record below may be included in the printed case." The same trial judge presided over both cases, and the parties agree that the court implicitly took judicial notice of the record in Doe I in ruling on defendant's motion to dismiss the case at bar. They therefore request that we consider the materials in the printed case. As a result of this agreement, we do not strike the printed case and consider the procedural history of Doe I in resolving the arguments on appeal.[1]

### A. Doe I

¶ 3. On June 21, 2022, plaintiff filed a complaint against the State of Vermont and eight current and former Department of Corrections officials and employees in their individual and

---

[1] A court may take judicial notice of the docket entries in a separate, related case. Peachey v. Peachey, 2021 VT 78, ¶ 3 n.1, 215 Vt. 570, 266 A.3d 1264; see V.R.E. 201(b) (providing that judicial notice may be taken of a fact "not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"). However, it is improper to take judicial notice of the content of prior testimony in another proceeding—as the trial court effectively did here—unless it is "part[] of the same 'case' for purposes of the record." In re Torres, 2004 VT 66, ¶ 8, 177 Vt. 507, 861 A.2d 1055 (mem.) (holding that post-conviction-relief court did not err in taking judicial notice of plea-colloquy transcript in underlying criminal case because "the transcript is part of the same proceeding" under applicable statute); see Sutton v. Purzycki, 2022 VT 56, ¶ 29 n.1, 217 Vt. 326, 295 A.3d 377 ("Courts cannot generally take judicial notice of findings of fact from other proceedings for the truth asserted therein."); Jakab v. Jakab, 163 Vt. 575, 578-81, 664 A.2d 261, 262-64 (1995) (concluding that trial court improperly took judicial notice in divorce action of testimony in earlier child-protection proceeding but declining to reverse on this ground because error was harmless). Because the parties do not argue that the trial court erred in taking judicial notice of the findings and testimony in Doe I, we do not consider whether it was appropriate to do so in light of the relationship between the two cases.

official capacities. Victoria Camacho was among the individual defendants named in the complaint. Plaintiff alleged that while she was incarcerated at Chittenden Regional Correctional Facility between August 14, 2014, and April 16, 2020, correctional officers employed by the Department—including Camacho—subjected her to sexual harassment, sexual assault, and sexual exploitation. Under the Vermont Rules of Civil Procedure, plaintiff was required to serve copies of the summons and complaint on the defendants within sixty days—by August 22, 2022. V.R.C.P. 3(a) (providing that where action commenced by filing complaint with the court, "summons and complaint must be served upon the defendant within 60 days after the filing of the complaint"); V.R.C.P. 6(a)(1)(C) (providing that where last day of time period "is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday").

¶ 4. On July 22, plaintiff filed a waiver of service of summons executed by the Chief Assistant Attorney General on behalf of the State. Several days later, in a response to plaintiff's motion to proceed by pseudonym, the State indicated that the Attorney General's Office was representing several of the individual defendants named in the complaint but had "not yet made a representation decision under 3 V.S.A. § 1102" as to three others—including Camacho. Section 1102 provides that where a civil action is brought against a State employee for alleged acts or omissions that the Attorney General determines, after investigation, "occurred within the scope of the employee's official duties," the Attorney General "shall defend the action on behalf of the employee." 3 V.S.A. § 1102(a), (b).

¶ 5. In August and September, the State again filed stipulated motions seeking an extension of the time to file a responsive pleading. Both motions noted that the Attorney General's Office had yet to determine whether it would represent three of the individual defendants under

§ 1102. In October, the State filed an answer on behalf of itself and each of the individual defendants, save for two—Camacho and John Grasso.

¶ 6. In a November 28 order, the court observed that proof of service on these two defendants had not been filed "despite the time for service having passed" and indicated that they would "be dismissed from the case unless proof of timely service is filed within 30 days." Plaintiff served Grasso but, on December 21, moved for an extension of time to serve Camacho. In support, plaintiff indicated that she only became aware that the Attorney General would not be representing Camacho and Grasso—and that they would therefore need to be served separately—when the State filed its answer on October 12. She further represented that on November 22, she requested the assistance of a local sheriff's department in serving Camacho at her last known address in New Hampshire, but its attempts to execute service had been unsuccessful. The court granted the motion and required plaintiff to file proof of service on Camacho by January 21, 2023.

¶ 7. On January 18, 2023, plaintiff filed the affidavit of a private investigator averring that he served Camacho on January 17 by leaving copies of the summons and complaint with her mother at their mutual residence in New Hampshire. The court issued an order stating, "[it] appears that all defendants have now been served" and indicating that Camacho's time to file an answer would expire on February 7. Camacho did not file an answer, and plaintiff moved for default judgment against her on March 28.

¶ 8. On April 4, counsel for Camacho filed a limited notice of appearance, opposed the request for default judgment, and moved to dismiss the claims against her because service was untimely or, in the alternative, ineffective. She argued that the sixty-day service deadline had already expired when plaintiff moved to extend it on December 21, and that plaintiff did not satisfy the excusable-neglect standard applicable to requests to extend a lapsed deadline, although defendant was not "at that time . . . in the case to articulate that argument to the court." See V.R.C.P. 6(b)(1)(B) (providing that "for good cause," court may extend time for act after

4

expiration "if the party failed to act because of excusable neglect"). Defendant noted that even assuming for the sake of argument that the sixty-day service deadline ran from the date on which plaintiff learned that the State would not represent her, she still neither timely served defendant nor timely moved to extend the deadline. Finally, defendant argued that dismissal was warranted because, even if any service before January 21 would have been timely given the court's order, defendant still had not been served because she did not reside at her mother's New Hampshire address on the date of purported service. In support of this final contention, defendant offered the declaration of her mother, who indicated that her daughter did not reside with her but she "d[id] not recall" what she told the investigator on this point before he left the papers with her.

¶ 9. In June 2023, the court held a hearing on defendant's motion to dismiss and issued a written decision including the following factual findings. Plaintiff sought to have the Attorney General's Office accept service of her complaint on behalf of all the individual defendants because each was a State employee at the time of the relevant allegations. The Attorney General's Office did not determine whether it would represent all defendants before the sixty-day service deadline expired in August. Nonetheless, plaintiff did not move to extend the deadline to serve Camacho until December, six months after her complaint was filed. That motion was granted, and plaintiff filed her return of service showing that defendant was served by leaving the papers with her mother at a New Hampshire address. The court credited the investigator's testimony that when he arrived at the home, defendant's mother told him that defendant lived there with her. The investigator left the papers with defendant's mother in reliance on Vermont Rule of Civil Procedure 4, which provides that service may be made on an individual by leaving copies of the summons and complaint "at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein." V.R.C.P. 4(d)(1), (e). However, at the time, defendant lived in Massachusetts. She had not resided at her mother's New Hampshire address since late 2021.

¶ 10.   Based on these findings, the court concluded that Camacho was never properly served: her mother's home was neither her dwelling house nor usual place of abode within the meaning of Rule 4.  As a result, the court denied plaintiff's motion for default and dismissed her claims against Camacho.[2]  Given this conclusion, the court expressly declined to reach plaintiff's arguments that service was timely.

## B.  Doe II

¶ 11.   Plaintiff filed the instant action against Camacho (hereinafter "defendant") alone on July 24, 2023.  In her complaint, plaintiff raised the same claims at issue in Doe I and summarized the circumstances surrounding the dismissal of those claims against defendant in the earlier action, including plaintiff's attempts to locate and serve her.  Defendant was timely served and again moved to dismiss, contending, as relevant here, that all colorable claims were barred by three-year statutes of limitations which began to run upon plaintiff's April 16, 2020 release from incarceration.  See 12 V.S.A. § 551(a) (providing that where plaintiff is "imprisoned at the time the cause of action accrues," limitations period begins to run upon plaintiff's release).

¶ 12.   In opposing defendant's motion, plaintiff effectively conceded that her claims were each governed by three-year statutes of limitations which would normally have expired on April 16, 2023.  However, she contended that her complaint was timely under a provision of Vermont's savings statute that allows a plaintiff to "commence a new action for the same cause within one year after the determination of the original action, when the original action has been commenced within the time limited by any statute of this State" but "dismissed for insufficiency of process caused by unavoidable accident or by default or neglect of the officer to whom the process was committed."  12 V.S.A. § 558(a)(1).  In the alternative, plaintiff briefly asserted that the statute of limitations should be equitably tolled because "[a]lthough the State did not act with malice, it

---

[2]  Plaintiff's claims against the State and other individual defendants remained pending in Doe I.  See No. 22-CV-02175.

nevertheless represented to plaintiff that it might be representing Ms. Camacho; if that had been true, service would have been complete as of July 1, 2022[,] when the State signed the waiver of service form." Defendant responded in opposition, arguing, among other things, that § 558(a)(1) applies only to insufficiency of process, and not the insufficiency of service of process at issue in Doe I.[3]

¶ 13. In September 2023, the civil division issued an order granting defendant's motion to dismiss. It found that, even assuming for the sake of argument that the term "process" encompassed "service of process," § 558(a)(1) did not apply. First, the court reasoned that plaintiff's "utter failure to ask the court to extend the time for service until months after the deadline expired" was not " 'unavoidable accident,' only sloppiness and neglect of one of the most basic duties of a litigator" "in no way justified" by the State's request for an extension of time to determine whether it would represent defendant. It further concluded that the service deadline did not lapse due to "excusable neglect," because seeking an extension was within plaintiff's reasonable control. The court also determined that there was no "neglect or default" by the investigator—it credited his testimony that he believed service to be proper based on defendant's mother's representation that her daughter lived with her and held that, though service was ultimately invalid, the investigator himself "did nothing wrong." Finally, the court rejected

---

[3] As defendant notes, "insufficiency of process" and "insufficiency of service of process" are independent grounds for dismissal under Vermont Rule of Civil Procedure 12(b)(4) and 12(b)(5). See V.R.C.P. 12(b)(4), (5). The former "concerns the form of the process," while the latter encompasses challenges to "the mode of delivery, the lack of delivery, or the timeliness of delivery of the summons and complaint." 5B C. Wright et al., Federal Practice and Procedure § 1353 (4th ed. 2024) (footnotes omitted) (noting that distinction between Rule 12(b)(4) and 12(b)(5) motions is sometimes misunderstood); see Reporter's Notes—V.R.C.P. 12 ("This rule is based on Federal Rule 12."). Defendant thus argued that if the Legislature intended § 558(a)(1) to encompass claims dismissed for insufficiency of service of process, it would have explicitly so provided, and would not have omitted the word "service" as used in the predecessor statute. However, defendant also acknowledged that we applied § 558(a)(1) in a case involving insufficient service of process in Weisburgh v. McClure Newspapers, Inc., although there was no indication there that any party raised the distinction between insufficiency of process and insufficiency of service of process. 136 Vt. 594, 596, 396 A.2d 1388, 1390 (1979) ("The crucial issue here is the failure to make timely service.").

plaintiff's equitable-tolling argument, explaining that it was defendant's mother who misled the investigator and there was no evidence that defendant was in any way responsible for her mother's actions. This appeal followed.

## II. Analysis

¶ 14. This Court reviews an order granting a motion to dismiss de novo, applying the same standard as the trial court: we take the factual allegations in the complaint as true, drawing all reasonable inferences in plaintiff's favor and disregarding defendant's contravening assertions, and will affirm only if it is beyond a doubt that there exist no facts or circumstances that would entitle the plaintiff to relief. Davis v. Am. Legion Dep't of Vt., 2014 VT 134, ¶ 12, 198 Vt. 204, 114 A.3d 99. Where a statute-of-limitations defense is raised in a motion to dismiss, the "motion will be granted when 'the face of plaintiff's complaint show[s] [her] claim to be time-barred.' " Sutton, 2022 VT 56, ¶ 80 (quoting Fortier v. Byrnes, 165 Vt. 189, 193, 678 A.2d 890, 892 (1996)).

### A. Savings Statute

¶ 15. Plaintiff's principal argument on appeal is that the trial court erred in concluding that she was not afforded an additional year in which to file her complaint under Vermont's savings statute, 12 V.S.A. § 558. She contends that § 558(a)(1) applied here because her claims against defendant in Doe I were dismissed for insufficient service of process caused by "unavoidable accident," or, in the alternative, the "default or neglect" of the serving officer. In response, defendant reasserts her argument, see supra, ¶ 12 n.3, that § 558(a)(1) does not encompass claims dismissed for insufficiency of service of process and contends that in any case, the circumstances surrounding plaintiff's failure to effectively serve her in Doe I did not constitute unavoidable accident or default or neglect on the part of the process server.

¶ 16. We review the trial court's interpretation of § 558(a)(1) without deference. Blake v. Petrie, 2020 VT 92, ¶ 7, 213 Vt. 347, 245 A.3d 768 (explaining that where motion to dismiss "turns on a question of statutory interpretation, our review of the trial court's conclusions is

nondeferential and plenary"). Like the trial court, we do not reach the parties' dispute over whether § 558(a)(1) applies to insufficiency of service of process. Even if it does, the statute still could not apply here because the failure of service on defendant in Doe I was the result of neither "unavoidable accident" nor the "default or neglect" of the private investigator to whom process was committed. See 12 V.S.A. § 558(a)(1).

¶ 17.　We turn first to plaintiff's argument that defendant's mother's misrepresentation to the investigator rendered plaintiff's failure to properly serve defendant in Doe I an "unavoidable accident" within the meaning of § 558(a)(1). Plaintiff contends that the trial court erred in considering her failure to obtain a timely extension of the service deadline in its unavoidable-accident analysis because her claims were dismissed for lack of proper service, not failure to make timely service. She asserts that her claims could not have been dismissed on the latter ground given the State's indication that it might represent defendant and the trial court's intervening rulings with respect to the service deadline. Plaintiff argues that the court thus should have taken a narrower view of the relevant circumstances and concluded that the accident was unavoidable because plaintiff acted reasonably in first hiring the sheriff's department to effect service, resorting to an investigator when those efforts failed, and subsequently relying on the misrepresentation that defendant's mother made to that investigator.

¶ 18.　We interpreted the term "unavoidable accident" in Tracy v. Grand Trunk Railway Co., a case that turned on the application of a statutory precursor to § 558 similarly providing that "if, in an action commenced within the time limited by the statute, the writ fails of sufficient service or return by unavoidable accident," the plaintiff could commence a new action for the same cause within one year after determination of the original suit. 76 Vt. 313, 317, 57 A. 104, 105 (1904) (citation omitted). We concluded that an "unavoidable accident" is not an accident "which no possible diligence could guard against," but rather one that occurs where "neither the plaintiff, nor his attorneys, nor any one for whose conduct the plaintiff was responsible, was lacking in the

9

exercise of such due and reasonable diligence as the business in hand called for." Id. at 317, 324-25, 57 A. at 107 (quotation omitted).

¶ 19. Under this test, the unavoidable-accident analysis is not constrained in the manner plaintiff suggests. The question for the court was whether plaintiff conducted herself with the degree of "due and reasonable diligence as the business in hand called for." Id. The "business in hand" was service of process in compliance with the relevant procedural rules. To be sure, this meant that plaintiff needed to serve defendant in a manner consistent with Rule 4. But it also meant that plaintiff either needed to serve defendant within the time limit imposed by Rule 3(a) or obtain an extension of the service deadline before it expired. As the trial court noted, this Court "require[s] plaintiffs to strictly comply with the rules when expiration of the statute of limitations is an issue." Ferncenia v. Guiduli, 2003 VT 50, ¶¶ 12-13, 175 Vt. 541, 830 A.2d 55 (mem.) (concluding that dismissal of action mandated where plaintiff failed to timely file waiver of service of process as required under V.R.C.P. 3 and 4 and statute of limitations had expired).[4]

¶ 20. Plaintiff argues that her claims against defendant in Doe I could not have been dismissed for lack of timely service because of the State's initial indication that it was still considering whether to represent defendant and the trial court's later rulings regarding the service deadline. For the reasons set forth below, we disagree. Defendant immediately raised this argument upon appearing in the case, but the trial court did not reach it given its conclusion that

---

[4] Plaintiff argues that Fercenia is distinguishable on its facts, has not been frequently cited by this Court in the years since it issued, and has been criticized by a federal district court. See Brooks v. K.S.T., Inc., No. 2:20-cv-00001, 2020 WL 5995210, at *6 (D. Vt. Oct. 9, 2020) (observing that Fercenia's requirement of strict compliance with time for service regardless of actual notice is "arguably inconsistent with the underlying purpose of service of process which is to provide timely notice of a claim"). We do not reach these arguments because they are raised for the first time in plaintiff's reply brief. See Robertson v. Mylan Lab'ys, Inc., 2004 VT 15, ¶ 2 n.2, 176 Vt. 356, 848 A.2d 310 ("We need not consider an argument raised for the first time in a reply brief."). However, we observe that the ultimate question presented is whether plaintiff and her attorneys approached service of process with the requisite degree of diligence, see Tracy, 76 Vt. at 324-25, 57 A. at 107, and plaintiff in any event does not explain why the requisite degree of diligence is not necessarily determined with reference to this Court's existing case law.

10

service on defendant's mother was no service at all. The court did not err in later recognizing that plaintiff's claims against defendant in Doe I could have been dismissed based on late service.

¶ 21. Plaintiff contends that her claims against defendant in Doe I could not have been dismissed for failure to make timely service because the State acted as defendant's representative when it requested and received extensions of its time to answer the complaint. However, in each of those motions the State expressly disclaimed any representation of defendant pending its determination under 3 V.S.A. § 1102. As a result, these filings could not have been construed as an appearance on behalf of defendant. V.R.C.P. 79.1(b), (c) (providing that attorney's appearance on behalf of defendant in case with multiple defendants is "deemed to be an appearance for all" defendants only if attorney does not state appearance is "for one or more [defendants] only"). Nor, as plaintiff suggests, could the State's motions be otherwise construed as a request to extend the time for defendant to answer. Because defendant had not yet been served with the summons and complaint, her time to file a responsive pleading had not begun to run. See V.R.C.P. 12(a)(1)(A) (providing that defendant shall serve answer "within 21 days after being served with the summons and complaint, unless the court directs otherwise").

¶ 22. Plaintiff also contends that the trial court "cited no law in support of the proposition that litigants must serve individual employees even when the already-served State represents that it may appear on their behalf." She contends that such a rule would result in unnecessary service fees, burden process servers, and require defendants who could be entitled to State representation to retain private counsel or appear pro se to protect their rights. There are two problems with this argument. First, plaintiff was not faced with a binary choice between serving defendant regardless of the State's indication that it might represent her or running the risk of the deadline expiring prior to service. She was free to seek an extension of the time to serve defendant pending the State's representation decision under Rule 6(b)(1)(A). See Clark v. Baker, 2016 VT 42, ¶ 15, 201 Vt. 610, 146 A.3d 263 (explaining that "filing is the time of commencement of the action for purposes

11

of the statute of limitations, as long as the time of service complies with the service rule," and where an extension of the time for service is granted by the trial court, service within that period "complies with the service rule"). More fundamentally, however, Rule 3 unambiguously requires that a plaintiff who commences an action by filing a complaint serve all defendants within sixty days, and nothing in Rule 4 contemplates that service on the State is service on an individual defendant who was or is employed by the State where the State has yet to enter an appearance on that defendant's behalf. See V.R.C.P. 3(a); V.R.C.P. 4.

¶ 23. Next, plaintiff argues the trial court's November 23 order constituted a sua sponte extension of the service deadline. This is in no way a reasonable construction of the court's order, which provided in relevant part that, "no proof of service has been filed for two defendants, despite the time for service having passed. They will be dismissed from the case unless proof of timely service is filed within 30 days." (Emphases added). The requirement of timely service and the requirement to file proof of that timely service are separate obligations. Though the plaintiff must, "within the time during which the person served must respond to the process, file the proof of service with the court," any "[f]ailure to make proof of service shall not affect the validity of the service." V.R.C.P. 4(i). The implication of the court's November 23 order is thus obvious. Plaintiff had thirty days to file proof of timely service on defendant—she did not have thirty more days in which to effect timely service. Any purported misapprehension of the order's terms cannot constitute unavoidable accident.

¶ 24. The court's order granting plaintiff's December 2022 motion to extend time for service on defendant does not alter the analysis. As defendant noted, she could not raise her argument that plaintiff did not demonstrate excusable neglect in response to this motion because she had not been served and therefore was not part of the case. The trial court appropriately considered plaintiff's conduct in allowing this deadline to expire as part of the package of circumstances relevant to whether plaintiff's attorneys were "lacking in the exercise of such due

12

and reasonable diligence as the business in hand called for." Tracy, 76 Vt. at 324-25, 57 A. at 107. It acted within its discretion in concluding, as part of this inquiry, that plaintiff's failure to seek an extension of the service deadline prior to its expiration was not attributable to excusable neglect. See Clark, 2016 VT 42, ¶ 20 ("The decision of the trial court in deciding whether there has been excusable neglect is discretionary, and our review is for abuse of discretion.").

¶ 25. As we have explained, the "appropriate focus" of the excusable-neglect analysis is "the reason for the delay, including whether it was in the reasonable control of the movant." In re Town of Killington, 2003 VT 87A, ¶¶ 16, 19, 176 Vt. 60, 838 A.2d 98 (concluding that failure to file timely appeal where "internal office procedure breakdown in [party's] counsel's office resulted in the failure to calendar the appeal deadline date" represented "type of inattention to detail" insufficient to constitute excusable neglect). The court did not abuse its discretion in concluding that it was within plaintiff's power to seek a timely extension of the deadline to serve plaintiff and that her failure to do so accordingly did not meet the "high" threshold for excusable neglect. Id. ¶¶ 16-17 (describing "appropriately hard line when it comes to determining when neglect that stems from factors totally within the control of a party of its attorney is 'excusable' "); see In re von Turkovich, 2018 VT 57, ¶ 5, 207 Vt. 545, 191 A.3d 974 ("[A] party generally will not show excusable neglect if the party fails to follow the clear dictates of a court rule, or cannot show substantial diligence, and professional competence, but as the result of some minor neglect, compliance was not achieved." (quotations and citations omitted)).

¶ 26. Within days of filing her complaint, plaintiff knew it was possible that the State would not represent three of the individual defendants, including defendant Camacho, and that they therefore might need to be served individually. Plaintiff's decision not to move to extend the service deadline if she wished to await the State's representation determination to save service costs is not supported by any reasonable construction of the applicable Rules. See, e.g., Weisburgh, 136 Vt. at 597, 396 A.2d at 1390 (explaining that "V.R.C.P. 4 places the responsibility

13

for seeing to service squarely upon the plaintiff" and reasoning that "[m]isapprehension of the county clerk's function, in the face of V.R.C.P. 4, cannot meet the standard of unavoidable accident"). Indeed, given the allegations of forceable sexual assault and sexual exploitation plaintiff raised against defendant in her complaint, she should have apprehended the significant possibility that the State would conclude that defendant was not entitled to defense under 3 V.S.A. § 1102. But even as the State repeatedly moved to extend its time to file a responsive pleading, plaintiff allowed the sixty-day deadline for service on defendant to pass without ever moving for an extension.

¶ 27. These are not the only considerations appropriately weighed in the unavoidable-accident analysis. See Tracy, 76 Vt. at 324-25, 57 A. at 107. By her own admission, plaintiff learned that the State would not represent defendant on October 12. However, she did not move to extend the service deadline at that time. Indeed, there is no indication that plaintiff commenced efforts to serve defendant until November 22. And although the sheriff's office indicated that it had been unable to locate defendant at the address plaintiff provided, plaintiff did not move to make service by alternative means. See, e.g., V.R.C.P. 4(g)(1) ("At any time after the filing of the complaint, the court, on motion upon a showing . . . that service cannot with due diligence be made by another prescribed method, shall order service by publication."). Further, the statute of limitations for plaintiff's claims had not yet expired on April 4, when defendant filed her motion to dismiss. At this point, plaintiff knew that defendant was taking the position that she had not been properly served. Plaintiff could have moved to voluntarily dismiss her claims against defendant and refiled them prior to the expiration of the limitations period on April 16, thus affording herself a fresh period in which to serve defendant. V.R.C.P. 41(a) (providing that plaintiff may voluntarily dismiss any claim without prejudice and "without order of the court by filing a notice of dismissal in any case in which the adverse party has not yet filed an answer or a motion for summary judgment"). She did not do so.

¶ 28.    Between the time when <u>Doe I</u> was filed and the trial court's dismissal of plaintiff's claims against defendant from that case, plaintiff neglected to utilize any one of the myriad procedural tools available to mitigate the risk that defendant would not be served in accordance with the Rules.  She thus failed to conduct herself with the degree of diligence required by the matter at hand and, as a result, the dismissal of her claims cannot be attributed to unavoidable accident.  See <u>Tracy</u>, 76 Vt. at 324-25, 57 A. at 107.

¶ 29.    To the extent that plaintiff suggests a different result should lie where these facts are compared to those at issue in <u>Tracy</u>, we disagree.  In that case the plaintiff was represented by attorneys in St. Johnsbury and Island Pond.  One day after the writ issued, the plaintiff's St. Johnsbury attorneys arranged for it to be forwarded by mail to his Island Pond attorney for service on defendant.  The Island Pond attorney—also a deputy collector of customs—was away on the date it was delivered to his office, and another government official had authority, in his absence, to open and examine official mail.  When the Island Pond attorney returned approximately one week later, "he did not find the writ," and "knew nothing about it," instead assuming that his client's St. Johnsbury attorneys were attending to service.  <u>Id</u>. at 321, 57 A. at 106.  The St. Johnsbury attorneys discovered that the writ had not been returned several months later and wrote to the Island Pond attorney, whereupon the writ was "found in a pigeon-hole" in his office, together with "official mail which had come in envelopes of the same general kind."  <u>Id</u>.; see <u>Pigeonhole</u>, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/pigeonhole [https://perma.cc/XA25-3T89] (defining "pigeonhole" to include "a small open compartment (as in a desk or cabinet) for keeping letters or documents").  We noted that the Island Pond attorney was acting in good faith and would have attended to service of the writ had it not been "in some way mislaid in his office."  <u>Tracy</u>, 76 Vt. at 321-22, 57 A. at 106.  We explained that this "tended to show an unavoidable accident unless counsel, prior to the expiration of the time of service, were wanting in due diligence in respect to the matter."  <u>Id</u>. at 322, 57 A. at 107.

¶ 30. Though the unintentional pigeonholing of a writ within an attorney's office, under those circumstances, constituted unavoidable accident when Tracy was decided 120 years ago, the "due and reasonable diligence" required of an attorney in attending to service of process is necessarily assessed under contemporary standards. The trial court did not err in concluding that there was no unavoidable accident here because plaintiff's dilatory conduct with respect to service on defendant fell short of those standards. As the Supreme Judicial Court of Maine held in Marble v. Hinds—cited with approval in Tracy—"[t]hat can not be deemed unavoidable accident, which could have been so easily avoided." Marble v. Hinds, 67 Me. 203, 206 (1877) (explaining that failure of service was not unavoidable accident because "[t]he risks of the probable absence of the deputy sheriff from home on the last day of service and the possible miscarriage of the mail were unnecessarily and negligently incurred"); see Tracy, 76 Vt. at 323-24, 57 A. at 107 (describing Marble as "good law").

¶ 31. Alternatively, plaintiff argues that 12 V.S.A. § 558(a)(1) applies because the insufficiency of service of process on defendant in Doe I was caused by the "default or neglect" of the process server. In plaintiff's view, if the failure of service was an avoidable accident, then the only means of avoiding it was for the investigator to assume that defendant's mother was lying or confused about where her daughter lived. If the investigator should have been this skeptical, she contends, it must follow that trusting defendant's mother was default or neglect, because under those circumstances the process server should have known that trusting defendant's mother was likely to result in defective service and it would have been improper to attest to the completion of service.

¶ 32. We first note that this argument proceeds from the same narrow view of the unavoidable-accident analysis we reject above. In any event, plaintiff fails to explain how these circumstances could constitute default or neglect on the part of the investigator. Indeed, she acknowledges that there was "no way" for the investigator to know that defendant's mother had

16

not been truthful in telling him that defendant lived with her. Instead, she contends that § 558 is remedial and therefore must be liberally construed to save her claims under Spear v. Curtis, 40 Vt. 59, 65 (1867), another early case decided under a predecessor savings statute.

¶ 33. In Spear, the plaintiff appropriately served a writ on the defendant and then returned it to the magistrate. However, because the magistrate neglected to appear at the time and place set for trial with the writ, "without any fault on the plaintiff's part, he was prevented from bringing his case to trial, of obtaining a judgment therein, or of having another magistrate continue the case for trial at a future day, so that his suit came to an untimely end." Spear, 40 Vt. at 64. We explained that the savings statute is remedial and should be liberally construed "to give the party the right to maintain a new suit, when, without his fault, the first, which was brought before his claim was barred by the lapse of time, has failed before he could bring it to trial upon its merits." Id. at 65 (emphasis added). We thus concluded that while the statute encompassed only neglect of the process server, not the neglect of the magistrate, the latter was "of the same character, and although not within the strict letter of the statute . . . is so clearly within the spirit, equity, and object of the statute, that we think it must be regarded as fairly embraced within it." Id. at 65.

¶ 34. It is true that § 558 is a remedial statute and therefore must be liberally construed to effectuate the Legislature's salutary intent. Leno v. Meunier, 125 Vt. 30, 33, 209 A.2d 485, 488 (1965). But our primary goal in interpreting a statute is always to give effect to the Legislature's intent. Our Lady of Ephesus House of Prayer, Inc. v. Town of Jamaica, 2005 VT 16, ¶ 14, 178 Vt. 35, 869 A.2d 145. To accomplish this end, we must look first to the statute's language, because we presume that the Legislature intended the plain, ordinary meaning of the words it chose. Shires Hous., Inc. v. Brown, 2017 VT 60, ¶ 9, 205 Vt. 186, 172 A.3d 1215. If the statute is clear on its face, this is also where our inquiry ends—"we accept its plain meaning and will not rely on statutory construction." Id. "Only where the language creates uncertainty will we resort to canons of statutory construction to ascertain the underlying legislative intent." Billewicz v. Town of Fair

Haven, 2021 VT 20, ¶ 14, 214 Vt. 511, 254 A.3d 194. This approach is no different with respect to § 558. Indeed, in Leno v. Meunier, we acknowledged that § 558 is a remedial statute and must be liberally construed, but explained that we nonetheless "cannot ignore the plain meaning of unambiguous words or language, it being the long established rule that where the meaning of a statute is plain there is no necessity for construction, and the courts must enforce it according to its terms." 125 Vt. 30, 33, 209 A.2d 485, 488-89 (1965) (explaining that relevant subsection of § 558 "specifically provides in clear, plain and definite language under what circumstances a plaintiff has the right to bring a new action for the same cause" and declining to read nonexistent provisions into this unambiguous language) (citation omitted).

¶ 35. Plaintiff does not explain how the plain, ordinary meanings of the terms "neglect" or "default" are ambiguous as used in § 558(a)(1). "Where, as here, statutory language is undefined, we accord the term its plain and ordinary meaning, which may be obtained by resorting to dictionary definitions." Hum. Rts. Def. Ctr. v. Correct Care Sols., LLC, 2021 VT 63, ¶ 16, 215 Vt. 362, 263 A.2d 1260 (quotation omitted). Black's Law Dictionary defines "default" as "[t]he omission or failure to perform a legal or contractual duty," and "neglect" as "[t]he failure to give proper attention to a person or thing; . . . the act of treating someone or something heedlessly or inattentively." Default, Black's Law Dictionary (12th ed. 2024); Neglect, Black's Law Dictionary (12th ed. 2024). Plaintiff has identified no legal or contractual duty that required the investigator to ascertain the truth of defendant's mother's statement, nor any additional attention which should have led to discovery. Accordingly, it was neither default nor neglect within the meaning of the statute for the investigator to rely on this representation.

¶ 36. Spear does not change this analysis. There, we were confronted with a situation where plaintiff bore no responsibility whatsoever for the dismissal of his action. See Spear, 40 Vt. at 64. For the reasons discussed above, that is not the case here. Regardless, to the extent Spear suggests an approach to the application of § 558 at odds with the general principles of statutory

construction we have repeatedly articulated since that time, it is overruled. If a plaintiff wishes to present an argument for relief from a statute of limitations not contemplated by § 558, they remain free to move for application of the equitable-tolling doctrine discussed below.

¶ 37.   We thus reaffirm that "[t]he benefits of [§ 558(a)] are available only to those coming within its provisions." Weisburgh, 136 Vt. at 596, 396 A.2d at 1390. Because there was no "unavoidable accident" and no "neglect or default" on the part of the process server, plaintiff does not satisfy the provisions of the savings statute. Though plaintiff highlights this Court's general preference for deciding cases on their merits and argues that defendant would not be prejudiced by a reversal, these broad considerations have no bearing on our analysis. The savings statute itself reflects a public policy preference for deciding cases on their merits. See Reid v. Spazio, 970 A.2d 176, 180 (Del. 2009) (explaining that Delaware's similar savings statute "reflects a public policy preference for deciding cases on their merits"). We must assume that the Legislature accounted for considerations of prejudice in deciding how to effectuate this purpose. See Vt. Nat'l Tel. Co. v. Dep't of Taxes, 2020 VT 83, ¶ 26, 213 Vt. 421, 250 A.3d 567 ("It is a basic presumption of statutory interpretation that language is inserted in a statute advisedly." (quotation omitted)). Like the federal judiciary, we will not disregard the procedural requirements the legislative branch places on access to our courts out of "sympathy for particular litigants." Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 152 (1984). Rather, " '[i]n the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.' " Id. (quoting Mohasco Corp. v. Silver, 447 U.S. 807, 826 (1980)).

### B.  Equitable Tolling

¶ 38.   In the alternative, plaintiff argues that the civil division erred in concluding that the statute of limitations was not suspended by the equitable-tolling doctrine, a remedy stemming "from the judiciary's inherent power to formulate rules of procedure where justice demands it."

Hooper v. Ebenezer Sr. Servs. & Rehab. Ctr., 687 S.E.2d 29, 32 (S.C. 2009). Though we have had few opportunities to consider the precise contours of the doctrine in Vermont, we have recognized that it may suspend a statute of limitations "where the defendant is shown to have actively misled or prevented the plaintiff in some extraordinary way from discovering the facts essential to the filing of a timely lawsuit." Kaplan v. Morgan Stanley & Co., 2009 VT 78, ¶ 11, 186 Vt. 605, 987 A.2d 258 (mem.) (citing Beecher v. Stratton Corp., 170 Vt. 137, 143, 743 A.2d 1093, 1098 (1999) (recognizing that jurisdictions that have adopted equitable-tolling doctrine "generally apply[] it only" in this circumstance or where "the plaintiff timely raised the precise claim in the wrong forum")).

¶ 39.    Plaintiff argues that the doctrine may apply because defendant could have purposefully evaded service in Doe I, and defendant's mother may have been acting on defendant's behalf when she misled the investigator about defendant's residence. She asserts that both arguments turn on disputed facts and therefore should not have been rejected at this stage of the litigation. We do not reach these contentions, however, because we conclude that plaintiff failed to preserve them for appeal.

¶ 40.    An issue is preserved for our review only where a party first presents it below "with specificity and clarity in a manner which gives the trial court a fair opportunity to rule on it." State v. Ben-Mont Corp., 163 Vt. 53, 61, 652 A.2d 1004, 1009 (1994). Before the trial court, plaintiff did not argue for equitable tolling based on the conduct of defendant or her mother. Instead, she briefly contended that equitable tolling was warranted by the actions of the State in indicating that it might represent defendant—an argument entirely distinct from the one she presses on appeal. See id. That the court analyzed plaintiff's equitable-tolling argument as though directed at defendant's conduct does not alter our preservation analysis. As the party seeking to invoke equitable tolling, plaintiff bore the burden of proving that its application was appropriate. See 51 Am. Jur. 2d Limitation of Actions § 157 ("Litigants face a considerable burden to demonstrate that

20

equitable tolling of a statute of limitations applies, and the burden for such relief rests on the party seeking it." (footnotes omitted)); see also Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005) (explaining that litigant seeking equitable tolling bears burden of demonstrating that it applies). The specific arguments she now seeks to advance were never presented to the trial court below. Thus, the trial court never had cause to consider whether they could be resolved without a hearing. See Messier v. Bushman, 2018 VT 93, ¶ 12, 208 Vt. 261, 197 A.3d 882 (explaining that court has "considerable procedural leeway on how to determine" motion to dismiss for insufficiency of service of process and observing that "an evidentiary hearing is preferable" where "written materials have raised issues of credibility or disputed issues of fact" (quotation omitted) (emphasis added)). The preservation doctrine forecloses plaintiff's argument that the trial court failed to adequately explore the factual basis of an equitable-tolling theory she never raised below.

### III. Conclusion

¶ 41. Plaintiff has not shown that the trial court erred in concluding that 12 V.S.A. § 558(a)(1) did not save her claims because there was neither "unavoidable accident" nor "default or neglect" on the part of the officer to whom process was committed, and she did not preserve her equitable-tolling argument for appeal. As a result, we affirm the trial court's dismissal of plaintiff's claims as time-barred.

Affirmed.

FOR THE COURT:

_____

Associate Justice

21