FNOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2026 VT 6

No. 25-AP-194

In re O.R.G. (B. R., Appellant)

Supreme Court

On Appeal from
Superior Court, Bennington Unit,
Probate Division

November Term, 2025


Lon T. McClintock, J.

Kevin Gustafson of Mountain View Law, PLLC, Killington, for Appellant.


PRESENT: Reiber, C.J., Eaton, Cohen and Waples, JJ., and Treadwell, Supr. J.,
Specially Assigned


¶ 1. **EATON, J.** This case concerns petitions by the grandmother of minor child O.R.G. to terminate the parental rights of O.R.G.'s parents and to adopt O.R.G. After unsuccessfully attempting to locate and serve parents with the petitions, grandmother requested the probate division's consent to complete service of process on parents by publication. The probate division denied grandmother's motion and dismissed her petitions for lack of service, reasoning that while grandmother had exercised due diligence in attempting to serve parents with process, service by publication was not available under the relevant statutes. We reverse and remand.

¶ 2. The following facts are apparent from the record. Grandmother is O.R.G.'s court-appointed guardian and has cared for O.R.G. since her birth in 2016 or shortly thereafter. In May

2023, grandmother filed a petition to adopt O.R.G. In June 2023, the probate division issued a notice requiring grandmother to file consents by parents to the adoption and for grandmother to complete service on parents. Grandmother had communicated with parents, who, according to grandmother, consented to the adoption, and in February 2024 she filed documents indicating consent from both parents. However, the probate division did not accept the consents because the documents grandmother filed did not comply with the statutory requirement. Father signed a consent form, but not in the presence of persons authorized pursuant to 15A V.S.A. § 2-405 to acknowledge father's consent. Mother also attempted to provide consent, but her document did not contain the required content outlined in 15A V.S.A. § 2-406 and was not acknowledged by a person authorized under § 2-405 to take mother's consent.

¶ 3.     In September 2024, grandmother filed a petition to terminate both parents' parental rights. In December, the probate division issued a show-cause order and set an in-person hearing because grandmother had not completed service of process on mother and father. At the January 2025 hearing and in her filings, grandmother represented that she was unable to locate O.R.G.'s parents for service of process. Grandmother had periodically communicated with mother via text message but did not have mother's physical address. Grandmother believed that mother was unhoused. Grandmother also believed that mother was living in the Hartford, Connecticut area and may have been receiving services from Connecticut's Child Protective Services Agency.

¶ 4.     For a short time, grandmother had communicated with O.R.G.'s father. During that period father was living in New York and expressed an interest in having a relationship with O.R.G. Father also visited O.R.G. at least once. However, during the fall of 2024, father stopped communicating with grandmother. Grandmother believed father and his spouse had separated and father had moved out of his home in New York. Grandmother was subsequently unable to locate or communicate with father.

¶ 5. Because she was unable to locate parents after the fall of 2024, grandmother requested the probate division's consent to complete service of process on parents by publication. Grandmother argued that publication was now the only available and practical method of completing service on parents. She asked the court to allow her to serve process in accordance with Vermont Rule of Civil Procedure 4(g), which states that "[a]t any time after the filing of the complaint, the court, on motion upon a showing made by verified complaint or affidavit duly filed that service cannot with due diligence be made by another prescribed method, shall order service by publication."

¶ 6. The probate division denied grandmother's request. The court indicated that it sympathized with grandmother but reasoned that 15A V.S.A. § 3-403(a) required parents to be "personally served" with the petition "in accordance with the Vermont Rules of Civil Procedure." The court opined that allowing service by publication would be "ignor[ing] the term 'personally served'" in the statute. The court analyzed the methods of service listed in Vermont Rule of Civil Procedure 4(d)(1) and concluded that only the first two forms of service listed—delivering a copy of the petition to the individual personally or leaving a copy with an appropriate person at their home—constituted "personal service" pursuant to the rule. The court supported its conclusion by looking to dictionary definitions of the terms "personal service" and "personally." The court reasoned that "the Legislature intended to require service that was more formal and more likely to result in actual notice to the parent" to protect parents' ability to defend their fundamental right to care, custody, and management of their child. The court held that grandmother had exhausted her options for personal service upon O.R.G.'s biological parents, but concluded that it was required to dismiss grandmother's petition for lack of personal service because of the language in 15A V.S.A. § 3-403(a).[1]

---

[1] The probate division's March 6, 2025, decision on grandmother's motion to complete service by publication indicated that it was not persuaded that grandmother had exhausted all

¶ 7. In June 2025, grandmother moved for permission to take an interlocutory appeal of the court's order pursuant to Vermont Rule of Appellate Procedure 5(b). The court granted that motion, finding that the issue presented was "a controlling question of law about which there exists substantial ground for difference of opinion" and that "an immediate appeal may materially advance the termination of the litigation." V.R.A.P. 5(b)(1)(A), (B). We accepted the appeal. See V.R.A.P. 5(b)(6)(B) ("If the Supreme Court determines that the relevant standard is met and accepts the appeal, it will be considered and determined in the Supreme Court as provided by these rules for other appeals."). The sole question in this appeal is whether the probate division appropriately interpreted the language in § 3-403(a) to preclude service by publication.

¶ 8. We review statutory interpretation de novo. Wright v. Bradley, 2006 VT 100, ¶ 6, 180 Vt. 383, 910 A.2d 893. Similarly, "[t]he interpretation of a procedural rule is a question of law which we review de novo." Weitz v. Weitz, 2019 VT 35, ¶ 7, 210 Vt. 248, 213 A.3d 1102. "When construing and administering rules of civil procedure, we must do so liberally, in a way that secures the just, speedy, and inexpensive determination of every action." Nelson v. Russo, 2008 VT 66, ¶ 8, 184 Vt. 550, 956 A.2d 1117 (mem.) (alteration and quotation omitted); see also V.R.C.P. 1 ("[The Rules of Civil Procedure] shall be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action."). When interpreting a procedural rule, "we employ tools similar to those we use in statutory construction," beginning by "consider[ing] [the rule's] plain language and the purpose it was designed to serve." State v. Amidon, 2008 VT 122, ¶ 16, 185 Vt. 1, 967 A.2d 1126. We also

means available to locate O.R.G.'s parents. The probate division stated that grandmother had not attempted personal service upon father at his last known address and had not contacted child protective agencies in Vermont or Connecticut for assistance in locating mother. Grandmother subsequently attempted to locate parents through the means suggested by the probate division and then communicated to the probate division that these further attempts had been unsuccessful. The probate division issued another decision on April 1, 2025, concluding that grandmother had exhausted all means available to complete personal service on parents.

consider the "reason and spirit of the law and its consequences and effects to reach a fair and rational result." Thurber v. Thurber, 2023 VT 53, ¶ 13, 218 Vt. 457, 310 A.3d 877 (quotation omitted) (interpreting V.R.F.P. 12). Finally, "we avoid interpretations that would lead to an unjust, unreasonable and absurd consequence." State v. Forcier, 162 Vt. 71, 75, 643 A.2d 1200, 1202 (1994) (quotation omitted).

¶ 9. Sections 3-501 to 3-506 of Title 15A concern petitions to terminate relationships between a parent and a child in the context of an adoption proceeding. Section 3-503(a) requires a petition to be served "upon the respondent in the manner prescribed in section 3-403 of this title." In turn, § 3-403(a) requires that a parent "who has not consented to the adoption or whose parental rights have not been terminated . . . be personally served in accordance with the Vermont Rules of Civil Procedure."

¶ 10. Vermont Rule of Civil Procedure 4 governs service of process in civil proceedings. The civil rules do not contain an explicit definition of "personal service." Instead, Rule 4(d)(1) outlines various forms of acceptable service within the state, including service:

> Upon an individual by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process, provided that if the agent is one designated by statute to receive service, such further notice as the statute requires shall be given. The court, on motion, upon a showing that service as prescribed above cannot be made with due diligence, may order service to be made by leaving a copy of the summons and of the complaint at the defendant's dwelling house or usual place of abode, or to be made by publication pursuant to subdivision (g) of this rule, if the court deems publication to be more effective.

See also V.R.C.P. 4(e) (providing that person outside state may be served in same manner as person within state).

¶ 11. As explained above, the probate division concluded that the term "personally served" in § 3-403(a) included only in-hand service to the parent or leaving a copy with an appropriate person at the parent's home. Absent any specific definition of personal service in Rule 4, this is a plausible interpretation of the language in 15A V.S.A. § 3-403(a). However, it is not the only reasonable interpretation. For example, the probate division could have also rationally concluded that the term "personally served" required direct service solely to the respondent—in other words, service "to the person to whom it is directed," pursuant to Black's Law Dictionary's definition of the term. Personal Service, Black's Law Dictionary (12th ed. 2024) (defining personal service as "[a]ctual delivery of the notice or process to the person to whom it is directed."). This alternate conclusion would be rooted both in the common dictionary definitions cited by the probate division and the legislative goal of ensuring parents receive actual notice of the summons. Because the language in § 3-403(a) "is capable of more than one reasonable interpretation," we conclude that it is ambiguous. State v. Brunner, 2014 VT 62, ¶ 18, 196 Vt. 571, 99 A.3d 1019.

¶ 12. "[I]f statutory language is ambiguous, we may consult legislative history, circumstances surrounding a statute's enactment, and evidence of the legislative policy at which the statute was aimed to determine the Legislature's intent." In re Investigation to Rev. Avoided Costs that Serve as Prices for Standard-Offer Program in 2020, 2021 VT 59, ¶ 14, 215 Vt. 247, 261 A.3d 656 (alteration and quotation omitted).

¶ 13. The Legislature codified § 3-403(a) in 1995, and it has not been amended since that time. 1995, No. 161 (Adj. Sess.), § 1. In 1995, and until January 2025, Vermont Rule of Civil Procedure 4(d) was explicitly titled "Summons: Personal Service Within the State." V.R.C.P 4(d)

6

(1995). That section directed that "[p]ersonal service within the state shall be made as follows:" and then listed the entirety of the language currently in Rule 4(d)(1). V.R.C.P. 4(d) (1995).[2]

¶ 14. Typically, where a statute incorporates another by specific reference it incorporates provisions as they exist at the time of adoption. See 2B N. Singer & S. Singer, Sutherland Statutory Construction § 51:8 (7th ed. 2025). Here, when § 3-403(a) was codified, the provision requiring that a parent be "personally served" according to the Vermont Rules of Civil Procedure directly implicated Rule 4(d), which was the "personal service" section of the process rule. Thus, we conclude that the Legislature intended to adopt all forms of service categorized as "personal service" in Rule 4(d) at the time. Under that definition of personal service, the court, on motion, and upon a showing that the other forms of service described in the rule cannot be made with due diligence, "may order service to be made . . . by publication." V.R.C.P. 4(d)(1) (1995).[3]

¶ 15. The plain language of the statute supports our conclusion. By instructing that a parent should be "personally served in accordance with the Vermont Rules of Civil Procedure," the Legislature recognized the distinction between the common, dictionary meaning of "personal service" and the legal meaning of the term, as articulated by the Rules in 1995. 15A V.S.A. § 3-403(a); see State v. Racine, 133 Vt. 111, 114, 329 A.2d 651, 654 (1974) ("[W]e must presume that all language is inserted in a statute advisedly."). Had the Legislature intended to require personal service to mean solely in-hand service, it could have so stated or simply omitted the reference to Rule 4. Instead, the Legislature opted to require personal service "in accordance with the Vermont Rules of Civil Procedure." 15A V.S.A. § 3-403(a). And, as the 2025 Reporter's Notes explain,

---

[2] In 2025, the caption and text of Rules 4(d) and (e) were amended to delete the term "personal," because the rules allow methods of substituted service that are not within the common meaning of "personal service" as in-hand delivery. Reporter's Notes—2025 Amendment, V.R.C.P. 4. Because the amendment post-dates the enactment of 15A V.S.A. § 3-403 and did not alter the substance of the rule, it does not affect our conclusion in this opinion.

[3] Due to the fact that the operable language in Rule 4(d)(1) in 1995 and the current version of Rule 4(d)(1) are identical, we will simply refer to the rule as Rule 4(d)(1) below.

the "personal service" section of Rule 4(d) has long "authorize[d] methods of substituted service not within the common meaning of personal service as in-hand delivery to the person to be served." Reporter's Notes—2025 Amendment, V.R.C.P. 4. Thus, we must assume that the Legislature intended to incorporate the definition of personal service then set forth in the Vermont Rules of Civil Procedure. See Doe v. Camacho, 2024 VT 72, ¶ 34, __ Vt. __, 329 A.3d 156 ("[O]ur primary goal in interpreting a statute is always to give effect to the Legislature's intent.").

¶ 16. We acknowledge the probate division's concern about protecting parents' fundamental rights. A "parent's right to care for his children is a fundamental liberty interest protected by both the United States Supreme Court and this Court." In re K.M.M., 2011 VT 30, ¶ 24, 189 Vt. 372, 22 A.3d 423; see also Troxel v. Granville, 530 U.S. 57, 65 (2000) ("The liberty interest . . . of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests recognized by this Court."). However, both this Court and the United States Supreme Court have affirmed the constitutionality of service by publication. See Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 317 (1950); Brady v. Brauer, 148 Vt. 40, 45, 529 A.2d 159, 162 (1987).

¶ 17. In Mullane, the United States Supreme Court explained that it "has not hesitated to approve of resort to publication as a customary substitute" in cases "where it is not reasonably possible or practicable to give more adequate warning." 339 U.S. at 317. "[I]n the case of persons missing or unknown," the use of "an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights." Id. (collecting cases).

¶ 18. Similarly, in Brady, this Court acknowledged that "publication is not, as a method of service, the equivalent of other prescribed means," but recognized that allowing service by publication pursuant to Rule 4(d)(1) "is a process rooted in the necessity raised by the total inability of other service procedures to be used to provide notice." 148 Vt. at 45, 529 A.2d at 162. We

8

explained that "[e]xceptions in the name of necessity do not sweep away the rule that within the limits of practicability notice must be such as is reasonably calculated to reach interested parties" and upheld the constitutionality of service by publication when it is "reasonably calculated" to notify the implicated party. Id. (quotations omitted). Rule 4(d) incorporates these constitutional requirements for service by publication by requiring a motion to the court showing that other forms of service "cannot be made with due diligence," V.R.C.P. 4(d)(1), and Rule 4(g) sets forth strict requirements designed to ensure that publication is reasonably calculated to notify the respondent.

¶ 19.   For these reasons, we conclude that 15A V.S.A. § 3-403(a) permits service of an adoption or termination petition by publication when the petitioner shows that the usual forms of service cannot be made with due diligence. We therefore reverse the probate division's order dismissing grandmother's petition for lack of service. Because the probate division already ruled that grandmother has demonstrated that the other forms of service cannot be performed with due diligence, it is directed on remand to grant grandmother's motion to provide service by publication in accordance with Rule 4(g).

Reversed and remanded for further proceedings consistent with this opinion.

FOR THE COURT:

_____

Associate Justice

9